**Daniel J. Weintraub - Bar #132111**
**James R. Selth – Bar #123420**
**Summer Saad – Bar #250337**
**WEINTRAUB & SELTH, APC**
**12121 Wilshire Boulevard, Suite 1300**
**Los Angeles, CA 90025**
**Telephone: (310) 207-1494**
**Facsimile: (310) 442-0660**

Attorneys for Chapter 11 Debtor and Plan Proponent

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>TEMIDAYO AKINYEMI,<br><br>Debtor and Debtor in Possession. | )  Case No. 2:09-bk-17862-EC<br>)<br>)    Chapter 11 Case<br>)<br>)  **CHAPTER 11 PLAN OF**<br>)  **REORGANIZATION OF**<br>)  **TEMIDAYO AKINYEMI**<br>)<br>)  **Disclosure Statement Hearing:**<br>)  Date:<br>)  Time:<br>)  Place:  Courtroom "1639"<br>)          255 E. Temple St.<br>)          Los Angeles, California 90012<br>)<br>)  **Plan Confirmation Hearing:**<br>)  Date:<br>)  Time:<br>)  Place:  Courtroom "1639"<br>)          255 E. Temple St.<br>)          Los Angeles, California 90012<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1

# I. INTRODUCTION

TEMIDAYO AKINYEMI, an individual, is the debtor and debtor-in-possession ("Debtor") in the above-captioned Chapter 11 bankruptcy case ("Case"). On April 3, 2009 ("Petition Date"), the Debtor commenced the Case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq. This document is the Chapter 11 Plan of Reorganization ("Plan") proposed by the Debtor ("Plan Proponent" or "Debtor"). Sent to you with this Plan, was the Disclosure Statement Describing Debtor's Chapter 11 Plan of Reorganization ("Disclosure Statement"), which was provided to help you understand the Plan. This is a reorganizing plan. In other words, the Proponent seeks to accomplish payments under the Plan by reorganizing his financial affairs. The effective date (the "Effective Date") of the Plan will be the first business day which is at least eleven (11) days following the date of entry of the Bankruptcy Court order confirming the Plan (the "Plan Confirmation Order), providing there has been no order entered staying the effectiveness of the Plan Confirmation Order. If there has been an order entered staying the effectiveness of the Plan Confirmation Order, the Effective Date shall be the first business day after the stay is no longer in effect with respect to the Plan confirmation Order. Following the Effective Date, the Debtor shall be referred to as the "Reorganized Debtor."

///

///

///

///

///

///

1

2

## II. BACKGROUND REGARDING DEBTOR'S ASSETS

3     The Debtor, an individual, commenced his bankruptcy case by filing a voluntary petition

4  under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code") on April 3, 2009.  The

5  Debtor is operating his business and managing his financial affairs as a debtor-in-possession

6  pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

7     The Debtor is a real estate developer.  His primary source of income are the rents

8  collected from properties he has developed, which include single family homes and multi-unit

9  apartment buildings.

10

11     The primary assets of the chapter 11 estate consist of the following real properties:

12     (a)     a 3-unit apartment building located at 1615 Delta St., Los Angeles, CA

13          ("1615 Delta");

14     (b)     a 2-unit apartment building located at 3320 and 3322 Bellevue Ave., Los

15          Angeles, CA ("Bellevue");

16

17     (c)     a single family residence located at 4240 Palmero Dr., Los Angeles, CA

18          ("Palmero");

19     (d)     a single family residence located at 2021 Park Dr., Los Angeles, CA

20          ("Park"); and

21     (e)     a condominium located at 4411 Los Feliz Blvd., #404, Los Angeles, CA

22          ("Los Feliz"). The first positioned secured lender has obtained relief from

23          stay and is expected to foreclose on the property at any moment.

24

25     The Debtor also holds a 100% interest in Western Regional Properties, LLC ("WRP").

26  WRP is a Delaware limited liability company, registered to do business in California.  It owns a

27  sixteen (16) unit apartment building in Los Angeles, California.

28

1

2

3    **1615 Delta**

4    a.      Status and Cash Flow

5        Presently only one of three units of 1615 Delta is rented.  The two vacant units require

6    renovation.   The estimated cost of construction is approximately $45,000.00.   The time to

7    complete construction is approximately 10 weeks.

8        The rented unit currently generates approximately $1,650.00 per month in rental income.

9    After payment of maintenance expenses, insurance and property taxes, the property generates a

10   net monthly income of approximately $800.00 which can be used for Plan payments, including

11   debt service on the property and other Plan payments.  The Plan proposes to strip liens down to

12   the property's current value and pay the secured claim in a manner that makes this property self-

13   sustaining.   Following their renovation, the two other units will generate approximately an

14   additional $3,500 in monthly rental income, with only a modest increase in expenses.  The Plan

15   also proposes to commence payments to certain creditors in the sixth full month following the

16   Effective Date in order to enable Debtor to build a reserve with which he can complete the

17   necessary renovations so that the income generated from this property can be maximized.

18   Debtor estimates that during the first six months of the Plan he will build a reserve of

19   approximately $70,000. This will be sufficient to complete renovations on this property and

20   provide additional reserves to cover other Plan payments in the event of vacancies in other

21   properties.

22   b.      Encumberances and Valuation

23       Following a hearing on notice to creditors, the Court determined that 1615 Delta has a

24   current fair market value of $160,000.00.

25

26

27

28

1615 Delta is encumbered by a first deed of trust in favor of Metrocities Mortgage, LLC ("Metrocities"). A true and correct copy of the deed of trust is attached to the Disclosure Statement as **Exhibit A**. The approximate amount of principal and interest currently outstanding on the note held by Metrocities is $541,637.39.

1615 Delta is also encumbered by a second deed of trust in favor of Metrocities. Since the balance on the first trust on this property exceeds the value of the property, the Metrocities second trust deed claim is entirely unsecured and is deemed a Class 8 (but only if and to the extent allowed) general unsecured claim under the Plan. Upon confirmation of the Plan, the Metrocities second trust deed, identified as document number 06 0002569, filed in the Official Records of the Los Angeles County Recorder, shall be stripped from 1615 Delta. A true and correct copy of the deed of trust is attached to the Disclosure Statement as **Exhibit B**.

### Bellevue

a. <u>Status and Cash Flow</u>

Bellevue is rented and generates approximately $3,475.00 per month in rental income. After payment of maintenance expenses, insurance and property taxes, this property generates net monthly income of approximately $2,850.00 which can be used for Plan payments, including: debt service on the property and other Plan payments. The Plan proposes to strip liens down to the property's current value and pay the secured claim in a manner that makes this property self-sustaining.

b. <u>Encumbrances and Valuation</u>

Following a hearing on notice to creditors, the Court determined that Bellevue has a current fair market value of $375,000.00.

Bellevue is encumbered by a first deed of trust in favor of Metrocities. True and correct copies of the note and deed of trust are attached to the Disclosure Statement as **Exhibit C**. The approximate amount of principal and interest currently outstanding on the note held by Metrocities is $501,464.99.

Bellevue is also encumbered by a second deed of trust in favor of Washington Mutual Bank, now J.P. Morgan Chase Bank, N.A. ("WaMu"). Since the balance on the first trust on this property exceeds the value of the property the Metrocities second trust deed claim is entirely unsecured and this claim is deemed a Class 8 claim (but only if and to the extent allowed) under the Plan. Upon confirmation of the Plan, the WaMu second trust deed, identified as document number 20071347393, filed in the Official Records of the Los Angeles County Recorder, shall be stripped from Bellevue. A true and correct copy of the deed of trust is attached to the Disclosure Statement as **Exhibit D**.

### Palmero

a.    Status and Cash Flow

Palmero is rented and generates approximately $3,150.00 per month in rental income. After payment of maintenance expenses, insurance and property taxes, this property generates net monthly income of approximately $2,500.00 which can be used for Plan payments, including: debt service on the property and other Plan payments. The Plan proposes to strip liens down to the property's current value and pay secured claims in a manner that makes this property self-sustaining.

///

///

///

a.    Status and Cash Flow

At a hearing on Debtor's Motion to Value the property, Debtor stipulated with the second trust deed holder that the property had a value no greater than that which would yield a $15,000 secured claim in favor of the second trust deed holder.

Palmero is encumbered by a first deed of trust in favor of Astoria Federal Mortgage Corp. ("Astoria"). A true and correct copy of the deed of trust is attached to the Disclosure Statement as **Exhibit E**. The approximate amount of principal and interest currently outstanding on the note held by Astoria is $582,403.48.

Palmero is also encumbered by a second deed of trust in favor of Los Angeles Schools Federal Credit Union ("Schools"). A true and correct copy of the deed of trust is attached to the Disclosure Statement as **Exhibit F**. The approximate amount of principal and interest currently outstanding on the note held by Schools is $301,046.00. Pursuant to stipulation, Schools and Debtor have agreed that Schools shall have a secured claim in the amount of $15,000 and a general unsecured claim (Class 8 under the Plan) in the amount of $285,516.21

**Park**

a.    Status and Cash Flow

Park is Debtor's primary residence and accordingly, at this time, the Park property generates no cash flow. Debtor is analyzing the costs and benefits of moving out of his residence to a smaller, less expensive location so that Park can be used as a rental property. Debtor is currently analyzing whether this change will provide a net benefit to the estate.

a.    Status and Cash Flow

7

Following a hearing on notice to creditors, the Court determined that Park has a current fair market value of $600,000.00.

Park is encumbered by a first deed of trust in favor of Metrocities. A true and correct copy of the deed of trust is attached to the Disclosure Statement as **Exhibit G**. The approximate amount of principal and interest currently outstanding on the note held by Metrocities is $737,551.89.

Park is also encumbered by a second deed of trust in favor of WaMu. Since the balance on the first deed of trust on this property exceeds the value of the property, the WaMu claim is entirely unsecured and the WaMu claim is deemed a Class 8 claim (but only if and to the extent allowed) under the Plan. Upon confirmation of the Plan, the WaMu second trust deed, identified as document number 20071233536, filed in the Official Records of the Los Angeles County Recorder, shall be stripped from Park. A true and correct copy of the deed of trust is attached to the Disclosure Statement as **Exhibit H**.

**Los Feliz**

a.      Status and Cash Flow

Los Feliz is rented and generates approximately $1,600.00 per month in rental income.

b.      Encumberances and Valuation

Los Feliz is encumbered by a first deed of trust in favor of Chase Home Finance, LLC. A true and correct copy of the deed of trust is attached to the Disclosure Statement as **Exhibit I**. The approximate amount of principal and interest currently outstanding on the note held by Chase is $436,792.48.

Los Feliz is also encumbered by a second deed of trust in favor of WaMu. Upon confirmation of the Plan (if this asset remains property of the estate), the WaMu second trust deed, identified as document number 20070977448, filed in the Official Records of the Los Angeles County Recorder, shall be stripped from Los Feliz. A true and correct copy of the deed of trust is attached to the Disclosure Statement as **Exhibit J**.

Following a hearing on notice to creditors, the Court determined that Los Feliz has a current fair market value of $350,000.00.

Chase obtained relief from the automatic stay and is expected to foreclose. Therefore, Debtor has not included the income or expenses relating to this property in the Plan or feasibility analysis.

### Western Regional Properties, LLC

Debtor is the owner of 100% of the equity in Western Regional Properties, LLC ("WRP"), a Delaware limited liability company registered to do business in California. WRP owns a 16-unit apartment building located at 1616 Delta St., Los Angeles, CA ("1616 Delta") that is not part of the bankruptcy estate. 1616 Delta is rented and generates approximately $23,425.00 per month in rental income. After payment of the mortgage, maintenance expenses, insurance and property taxes, this property generates net monthly income of approximately $11,550.00. All of the net monthly income is available to be used for Plan payments.

### III. SUMMARY OF THE PLAN

**A.    Introduction.**

It is important that creditors know that pursuant to this reorganization effort and Debtor's Chapter 11 Plan, unsecured creditors will receive payments equal to seventeen percent (17%) of their claims. In contrast, **if the Plan is not approved, <u>unsecured creditors and the junior lienholders will likely receive nothing because the senior lienholders will be allowed to foreclose</u>**. The current fair market values (as established by the Court) of 1615 Delta, Los Feliz, Palmero, Bellevue, and Park (collectively, the "Properties") are exceeded by the claims of the senior lienholders of each property, thereby resulting in the senior lienholders being undersecured and the junior lienholders being wholly unsecured. Only junior lienholders who have allowed claims will participate in the Plan.

Under the Plan, the Debtor will contribute his post confirmation income sufficient to pay the allowed claims of junior lienholders and his unsecured creditors a distribution equal to 17% of their allowed claims. The Plan will also restructure the senior obligations on all properties by recapitalizing arrearage, reducing the secured amount to reflect current value, and if necessary, reducing the interest rates on these obligations to current market conditions. This restructure will increase net cash flow and allow Debtor to pay additional amounts to creditors.

**B.      Summary of Treatment of Senior Lienholders**

Based on the Court determined value of the Properties, all senior lienholders are undersecured. The Plan bifurcates the senior lienholders' claims into secured and unsecured claims (with the exception of the senior lien on Park which is Debtor's primary residence and not subject to bifurcation). Specifically, the Plan provides each senior lienholder with a secured claim in the amount of the Court determined value of the property securing such claim and an unsecured claim for the balance. Accordingly, these senior lienholders shall receive two

distributions: one pursuant to its secured claim, and one pursuant to its general unsecured claim. Furthermore, the senior lienholders shall have the right to vote both in the secured creditor class of claims and in the general unsecured creditor class of claims.  However, senior lienholders may elect different treatment as described below.

Senior lienholders have the right to make an "1111(b) election."  This election is premised on Bankruptcy Code section 1111(b)(2), which states that "[i]f such an election is made, then . . . such claim is a secured claim to the extent that such claim is allowed." 11 U.S.C. § 1111(b)(2).  In other words, making the election indicates that the creditor elects to have both the unsecured and secured portions of its claim treated as a secured claim and to relinquish its right to vote on the plan as a general unsecured creditor and share in the distribution to general unsecured creditors.  Making an 1111(b) election will result in the entire claim being paid at 0% interest as opposed to the interest rate proposed by the Plan for payment of the secured portion of the claim.  This is because, irrespective of whether the creditor makes an 1111(b) election, the present value of the distribution to senior lienholders is equal to the value of the property securing their claim.  Debtor proposes a Plan to bifurcate the secured portion of the claim (which is equal to the value of the collateral) from the unsecured portion of the claim.  The Plan proposes to restructure each loan so as to pay the secured portion of the claim the highest interest rate feasible for that particular property, given the net income derived by the property.  A certain monthly payment was reached when calculating those interest rates.  If the creditor makes an 1111(b) election, the monthly installment payment will be the same.  However, because the monthly installment payment is reflective of present value, the creditor will not be paid any interest on a restructured loan of an amount larger than present value of the property, as that would exceed the payment to which the secured creditor is entitled.  Many senior lienholders will

determine that it is in their best interest to decline to elect section 1111(b) so that they can earn interest on the secured portion of their claim.

Furthermore, **if all senior lienholders make the 1111(b) election, the Case will very likely get converted to a Chapter 7 liquidation wherein all senior lienholders are likely to incur losses instead of receiving what the plan proposes**, e.g., earning interest on the secured portion of their claims, and receiving payment on the unsecured portion of their claims consistent with the proposed distribution to general unsecured creditors, as the Chapter 11 Plan of Reorganization provides. **If a liquidation were to occur, the senior lienholders will almost certainly receive less than the secured portion of their claim, and will not earn any interest or receive any payment on the unsecured portion of the claim.**

**Finally, a liquidation will result in all junior lienholders and general unsecured creditors receiving no distribution at all**. Therefore, the Debtor urges senior lienholders to **decline** to make the 1111(b) election.

TO MAKE AN 1111(b) ELECTION, SENIOR LIENHOLDERS <u>MUST</u> FILE A NOTICE OF INTENT TO ELECT 11 USC 1111(b) WITH THE COURT AND SERVE DEBTOR'S COUNSEL BY MAILING SAME TO THE ATTENTION OF SUMMER SAAD, ESQ., WEINTRAUB & SELTH, APC, 12121 WILSHIRE BLVD., SUITE 1300, LOS ANGELES CALIFORNIA 90025 NO LATER THAN 5 BUSINESS DAYS PRIOR TO THE DUE DATE FOR SUBMITTING BALLOTS. THE NOTICE MUST INDICATE THE CLASS IT IS FILED ON BEHALF OF AND PROPERLY IDENTIFY THE PROPERTY TO WHICH IT RELATES. ONLY THE HOLDER OF THE FIRST TRUST DEED OF EACH PROPERTY MAY FILE SUCH NOTICE.

///

///

///

**C.    Summary of Treatment of Junior Lienholders and Other General Unsecured
Creditors**

Based on the Court determined values of the Properties, all junior lienholders are wholly
unsecured.  Accordingly, upon entry of an order confirming the Plan, the liens of all junior
lienholders identified in **Exhibit P** (attached to the Disclosure Statement), shall be stripped from
the properties they were recorded on and shall no longer be a lien or encumbrance on such
property; and junior lienholders shall be treated as having a general unsecured claim along with
the other general unsecured creditors.  Only those junior lienholders who have allowed claims
will receive a distribution under the Plan.  Under the Plan, all general unsecured creditors
holding allowed claims shall receive a distribution based on their general unsecured claim.  <u>In
the event the Plan is not approved, the senior lienholder is likely to foreclose on the Properties
resulting in no distributions to any other creditors.</u>

## IV.  CLASSIFICATION AND TREATMENT OF CLAIMS
## AND INTERESTS UNDER THE PLAN

**A.    What Creditors and Interest Holders Will Receive Under the Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various
classes according to their right to priority.  The Plan states whether each class of claims or
interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.    Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has <u>not</u> placed the following claims in a class:

**1.    Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Case that are allowed under Bankruptcy Code Section 507(a)(1).  The Bankruptcy Code requires that all administrative claims be paid on the Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan:

| Name | Amount Owed | Treatment |
|---|---|---|
| Weintraub & Selth, APC, Debtor's bankruptcy counsel ("WS") | $60,000 (estimated) | Paid in full from cash on hand upon the later of (a) the Plan's Effective Date, or (b) the entry of an Order allowing the fees. |
| Jerome S. Cohen, Debtor's former bankruptcy counsel | $16,500.00 | This claimant is entitled to payment in full from cash on hand on the Plan's Effective Date but has agreed to accept installment payments of $3,000 per month commencing December 2009. |
| Hiramatsu & Associates, Debtor's financial consultant | $2,000 (estimated) | Paid in full from cash on hand upon the later of (a) the Plan's Effective Date, or (b) the entry of an Order allowing the fees. |
| Mark A. Hearn ("Hearn"), Debtor's appraiser | $0 | N/A.  Pursuant to employment application, Hearn has been paid from non-estate funds. |
| Clerk's Office Fees | $1,000 (estimated) | Paid in full upon the Effective Date. |
| Office of the U.S. Trustee Fees | $650.00(estimated) | Paid in full upon the Effective Date. |
| **TOTAL** | $85,150(estimated) | |

<u>Court Approval of Fees Required</u>:

The Court must rule on all fees listed in this chart before the fees will be owed, except for post-petition trade payables and fees owing to the Clerk's Office and U.S. Trustee or fees to be paid from non-Debtor sources or, if the Debtor waives the right to require the filing of fee applications, fees of professionals to be paid from proceeds from a sale or financing transaction in excess of the amount necessary to pay all claims against the Debtor (i.e., claims paid from equity). The professional in question must file and serve a properly noticed fee application, and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under the Plan. As discussed in this Disclosure Statement, the Debtor will have sufficient cash on hand on the Effective Date to satisfy the foregoing administrative claims.

## 2. **Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Bankruptcy Code Section 507(a)(8). The Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding six (6) years from the date of the assessment of such tax. The following chart identifies the Plan's treatment of the class of interest holders:

///

///

///

///

///

1    ///

2    ///

3    ///

4

5

| Name | Priority Tax Claim Amount | Treatment |
|---|---|---|
| Priority claim of: Franchise Tax Board | $370.14 (per filed proof of claim) | Paid in full upon the Effective Date. |
| Priority claim of: L.A. County Treasurer and Tax Collector (1615 Delta property tax) | $7,918 (per Debtor's Schedule) | Pending the payment of the claim, this Class shall continue to retain its lien and shall accrue interest (including accrual of interest on the disputed portion of the claim) in accordance with 11 U.S.C. §§ 506(b) and 511. The treatment described in the Plan shall be in full settlement and satisfaction of this allowed claim Interest will accrue at 3% and Debtor will make monthly installment payments of $142.28 for 5 years, commencing April 1, 2010. |
| L.A. County Treasurer and Tax Collector (Los Feliz property tax) | $3,330.91 (per filed proof of claim) | The First Trust Deed Holder has obtained relief from the automatic stay.  This secured creditor will be paid amounts due it in the order of priority from the foreclosure proceeds and the claim will be extinguished. The treatment described in the Plan shall be in full settlement and satisfaction of this allowed claim. |
| L.A. County Treasurer and Tax Collector (Palmero property tax) | $6,254.00 (per Debtor's Schedule) | Pending the payment of the claim, this Class shall continue to retain its lien and shall accrue interest (including accrual of interest on the disputed portion of the claim) in accordance with 11 U.S.C. §§ 506(b) and 511. The treatment described in the Plan shall be in full settlement and satisfaction of this allowed claim. Interest will accrue at 3% and Debtor will make monthly installment payments of $112.38 for 5 years, commencing April 1, 2010. |
| L.A. County Treasurer and Tax Collector (Park property tax) | $7,533 (per Debtor's Schedules) | Pending the payment of the claim, this Class shall continue to retain its lien and shall accrue interest (including accrual of interest on the disputed portion of the claim) in accordance with 11 U.S.C. §§ 506(b) and 511. |

| Name | Priority Tax Claim Amount | Treatment |
|---|---|---|
| | | The treatment described in the Plan shall be in full settlement and satisfaction of this allowed claim.

Interest will accrue at 3% and Debtor will make monthly installment payments of $135.36 for 5 years, commencing April 1, 2010. |

**C.    Classified Claims and Interests**

**1.    Class of Secured Claims**

Secured claims are claims secured by liens on property of the estate.  The following charts list the classes containing the Debtor's secured pre-petition claims and their treatment under the Plan:

///

///

///

///

///

///

///

///

///

///

///

///

///

1    ///

2    ///

3    ///

4    ///

5    ///

6    **Claims Secured by Delta**

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of: First Trust Deed Holder, Metrocities Mortgage, LLC | N | Y (Creditor in this class is entitled to vote on the Plan) | Pending the payment of the secured portion of its claim, this Class shall continue to retain its lien and shall accrue interest (including accrual of interest on the disputed portion of the claim) |
|  | Collateral description = 1615 Delta |  |  | The treatment of the holder of the class 1 allowed claim described in the Plan shall be in full settlement and satisfaction of all class 1 allowed claims. |
|  | Claim Priority = 1st |  |  |  |
|  | Collateral value = $160,000 |  |  | The secured claim will be paid in accordance with the interest rate set forth in the Note, which as of November 20, 2009 was 2.74%. It will be fixed at this rate for three years. Thereafter the interest rate will adjust every 6 months pursuant to the 6-month LIBOR index, subject to the Note's limits on interest changes. Debtor will make interest only payments on a monthly basis (approximately $388) for the first 5 years commencing the 1st day of the sixth full month following the Effective Date; with a balloon payment of the balance remaining due on July 1, 2015. |
|  | Total Amount of Claim = $541,637.39 (per Debtor's Schedule) |  |  |  |
|  | Secured Portion of Claim = $160,000 |  |  |  |
|  | Unsecured Portion of Claim = $381,637.39 |  |  |  |
|  | entitled to a second ballot in this amount and a 17% distribution per Class 8 to be used in a vote among the Class of General Unsecured Creditors if creditor does NOT elect Section 1111(b) |  |  | The unsecured portion of the claim will be paid as the Plan provides for general unsecured claims. |
|  |  |  |  | If Class 1 Elects Section 1111(b): The total amount of claim will be paid but no interest will accrue. Class 1 will receive monthly installments of $388; with a balloon payment of the balance due in 30 years on July 1, 2040; and |
|  |  |  |  | Class 1 cannot vote in the class of general unsecured creditors or receive the 17% distribution afforded Class 8 claims |

28

If Class 1 does not elect 1111(b) treatment, it will accrue and receive interest during the first 5 years and receive a balloon payment in the total amount of the Secured Portion of its claim on July 1, 2015, plus a 17% distribution on the unsecured portion of its claim to be paid as provided in Class 8.

If Class 1 elects 1111(b), it will <u>not</u> accrue or receive any interest on its claim and will not receive a balloon for 30 years (on July 1, 2040). It will <u>not</u> receive any distribution per Class 8 and will also loose its right to cast an extra ballot as a Class 8 member.

**Claims Secured by Los Feliz**

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|---------------|----------------|-----------|
| 2 | Secured claim of: First Trust Deed Holder, Metrocities Mortgage, LLC<br><br>Collateral description = Los Feliz<br><br>Claim Priority = 1st<br><br>Collateral value = $350,000<br><br>Total Amount of Claim = $436,792.48 (per filed claim)<br><br>Unsecured Portion of Claim: $86,792.48 | N | N<br><br>(Creditor in this class is not entitled to vote on the Plan) | The Class 2 creditor has obtained relief from the automatic stay. This secured creditor will be paid amounts due it in the order of priority from the foreclosure proceeds and the claim will be extinguished.<br><br>The treatment of the holder the class 2 allowed claim described in the Plan shall be in full settlement and satisfaction of all class 2 allowed claims. |

**Claims Secured by Bellevue**

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | Secured claim of: First Trust Deed Holder, Metrocities Mortgage, LLC<br><br>Collateral description = Bellevue<br><br>Claim Priority = 1st<br><br>Collateral value = $375,000<br><br>Total Amount of Claim = $501,464.99 (per filed claim)<br><br>Secured Portion of Claim = $375,000<br><br>Unsecured Portion of Claim: $126,464.99<br><br>entitled to a second ballot in this amount and a 17% distribution per Class 8 to be used in a vote among the Class of General Unsecured Creditors if creditor does NOT elect Section 1111(b) | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Pending the payment of the secured portion of its claim, this Class shall continue to retain its lien and shall accrue interest (including accrual of interest on the disputed portion of the claim)<br><br>The treatment of holder of class 3 allowed claim described in the Plan shall be in full settlement and satisfaction of all class 3 allowed claims.<br><br>The secured claim will be paid in accordance with the interest rate set forth in the Note, which as of November 20, 2009 was 2.74%. It will be fixed at this rate for three years. Thereafter, the interest rate will adjust every 6 months pursuant to the 6-month LIBOR index, subject to the Note's limits on interest changes. Debtor will make interest only payments on a monthly basis (approximately $871) for the first 5 years commencing the 1st day of the sixth full month following the Effective Date; with a balloon payment of the balance remaining due on July 1, 2015.<br><br>The unsecured portion of the claim will be paid as a general unsecured claim.<br><br>If Class 3 Elects Section 1111(b):<br>The total claim will be paid at 0% interest in monthly installments of $871 until the total amount of the claim is paid in full; and<br><br>Class 3 cannot vote in the class of general unsecured creditors or receive the 17% distribution afforded Class 8 claims. |

If Class 3 does not elect 1111(b) treatment, it will accrue and receive interest during

the first 5 years and receive a balloon payment in the total amount of the Secured Portion of its

claim on July 1, 2015, plus a 17% distribution on the unsecured portion of its claim to be paid as

provided in Class 8.

However, if Class 3 elects 1111(b) treatment, it will only receive the total amount of

its claim with no interest and will not receive any distribution as a Class 8 member.  It will also

loose its right to cast an extra ballot as a Class 8 member.

**Claims Secured by Palmero**

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | Secured claim of: Astoria Federal Mortgage Corp.<br><br>Collateral description = Palmero<br><br>Claim Priority = 1st<br><br>Collateral value = $597,403<br><br>Total Amount of Claim = $ 582,403.48 (per filed claim)<br><br>Secured Portion of Claim = $582,403.48<br><br>Unsecured Portion of Claim: $0 | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Pending the payment of the secured portion of its claim, this Class shall continue to retain its lien and shall accrue interest (including accrual of interest on the disputed portion of the claim)<br><br>The treatment of the holder of the class 4 allowed claim described in the Plan shall be in full settlement and satisfaction of all class 4 allowed claims.<br><br>The secured claim will be paid in accordance with the interest rate set forth in the Note, which as of November 20, 2009, was 3.53%. This interest rate will be fixed at 3.53% for a 30 year term.  Interest only payments will be made until December 2014 and fully amortized thereafter.  Interest-only monthly payments will be approximately $1,820 and will commence on the 1st day of the sixth full month following the Effective Date.<br><br>All arrears owing on the date monthly payments commence will be recapitalized and added to the principal balance of the loan.<br><br>If  Class 4 Elects Section 1111(b): N/A |

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 5 | Secured claim of: Los Angeles Schools Federal Credit Union<br><br>Collateral description = Palmero<br><br>Claim Priority = 2nd<br><br>Collateral value = $597,403<br><br>Total Amount of Claim = $301,046<br><br>Secured Portion of Claim = $15,000<br><br>Unsecured Portion of Claim: $285,516.21<br><br>entitled to a second ballot in this amount and a 17% distribution per Class 8 to be used in a vote among the Class of General Unsecured Creditors | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Pending the payment of the secured portion of its claim, this Class shall continue to retain its lien and shall accrue interest (including accrual of interest on the disputed portion of the claim)<br><br>The treatment of the holder of the class 5 allowed claim described in the Plan shall be in full settlement and satisfaction of all Class 5 allowed claims.<br><br>The secured claim will be paid in accordance with the adjustable interest rate set forth in the note, which as of November 20, 2009, was 3.25%, fully amortized over 30 years, monthly payments will be approximately $69, and will commence on the 1st day of the sixth full month following the Effective Date.<br><br>The unsecured portion of the claim will be paid as a general unsecured claim.<br><br>If Class 4 Elects Section 1111(b): N/A waived pursuant to Stipulation |

///

///

///

///

///

///

///

///

///

///

///

## Claims Secured by Park

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 6 | Secured claim of: First Trust Deed Holder, Metrocities Mortgage, LLC<br><br>Collateral description = Park<br><br>Claim Priority = 1st<br><br>Collateral value = $600,000<br><br>Amount of Claim = $ 737,551.89 (per filed claim)<br><br>Unsecured Portion of Claim =N/A – this is Debtor's primary residence not subject to bifurcation of claim | N | Y<br><br>(Creditor in this class is entitled to vote on the Plan) | Pending the payment of the secured portion of its claim, this Class shall continue to retain its lien and shall accrue interest (including accrual of interest on the disputed portion of the claim).<br><br>The treatment of the holder of the class 6 allowed claim described in the Plan shall be in full settlement and satisfaction of all class 6 allowed claims.<br><br>All arrears owing on the date monthly payments commence will be added to the principal balance of the loan and Debtor will continue to make the regular monthly payments under the loan in the amount of: $3,457, commencing April 1, 2010. |

Class 6 is secured by Debtor's primary residence and therefore cannot be modified.

Accordingly, no 1111(b) options are applicable.

///

///

///

///

///

///

///

///

///

**Claim Secured by Debtor's Vehicle:**

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|---------------|----------------|-----------|
| 7 | Secured claim of: Musician's Interguild Credit Union<br><br>Collateral description = 2005 Lexus LS430<br><br>Claim Priority = 1st<br><br>Collateral value = $25,000<br><br>Amount of Claim = $ 24,511.94 (as of August 12, 2009, per Reaffirmation Agreement) | N | N<br><br>(Creditor in this class is not entitled to vote on the Plan) | Debtor has entered into a reaffirmation agreement with this creditor, which was approved by the Court in an Order entered October 2, 2009.  Debtor will continue to pay this creditor pursuant to the reaffirmation agreement, installment payments in the amount of $485 per month.<br><br>Pending the payment of the secured portion of its claim, this Class shall continue to retain its lien and shall accrue interest (including accrual of interest on the disputed portion of the claim)<br><br>The treatment of holder of class 7 allowed claim described in the Plan shall be in full settlement and satisfaction of all class 7 allowed claims. |

### 2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.  The Debtor is not aware of any claims that would qualify as Sections 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims under the Plan.

///

///

///

### 3.    Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a).  **Exhibit K** (attached to the Disclosure Statement) consists of a chart showing all unsecured claims against the estate.  The following chart identifies the Plan's treatment of the classes containing <u>all</u> of the Debtor's general unsecured claims:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 8 | <u>Claims:</u><br>All General Unsecured Claims<br><br><u>Amount of all claims</u><br>Approximately $538,162.88 (per Schedule F undisputed claims plus filed claims)<br><br>Plus: $226,144.16 (wholly unsecured junior lien holders)<br><br>Plus $793,618.59 (unsecured portion of senior lien holder's claims<br><br>**Total:  1,628,222.63** | N. | Y<br><br>Allowed claims in this class are entitled to vote on the Plan | Class 8 shall receive their pro-rata share of a 17% distribution to be paid over 3 years. The total amount distributed will be $277,000  The first installment of $7,698 will be made on the first day of the sixth full month following the Effective Date, and each month thereafter until $277,000 is paid in full.<br><br>The treatment of holder of class 8 allowed claim described in the Plan shall be in full settlement and satisfaction of all class 8 allowed claims. |

### D.    Means of Effectuating the Plan

### 1.    Funding for the Plan

The Plan will be funded by the Debtor's business operations, specifically rents collected as a result of his ownership of the Properties and his employment.  Debtor will also contribute funds from the income stream available to him from property which is not property of the estate, but which is held by his company, WRP.  The total net income available for Plan payments from

these various sources is $19,825 per month.[1]  Also, during the pendency of this Chapter 11 case,

Debtor has not been making mortgage payments and has been saving and segregating the rental

income from the estate's rental of various real properties.  As of October 8, 2009, Debtor had

$35,000 cash on hand.  Debtor projects that on the Effective Date, Debtor will have $98,954

available for the payment of administrative expenses.  A Portion of Debtor's cash on hand is

cash collateral.  Upon confirmation of the Plan, cash collateral will be used to pay administrative

expenses.

## 2.    Disbursing Agent

Debtor will act as his own disbursing agent with the assistance of BMS, Inc., who will

provide "Trustworks" software and software support through a software licensing agreement

which will facilitate the calculation and distribution of the pro-rata share for each general

unsecured claimant.  BMS, Inc., is bonded.  The software licensing agreement will be at no cost

to Debtor but includes a stipulation that Debtor deposit the funds to be distributed with J.P.

Morgan Chase Bank, N.A. ("Chase").  Chase is also bonded.  BMS, Inc., will also cause the

payments to be mailed to each recipient at no extra cost, but will pass through the expense of

postage to Debtor.

## 3.    Objections to Claims

Pursuant to 11 U.S.C. § 502(a), any party in interest may assert objections to claims.

Objections to claims shall be served and filed no later than 90 days after the date of entry of

Order Confirming the Plan, or such later time as ordered by the Court.  Attached to the

---

[1] In addition, Debtor receives $200 monthly residual payments for his work as a writer, but Plan funding and feasibility is not depending on this residual payment, but depends instead on the rental income described above.

Disclosure Statement as **Exhibit L** is a claims chart, which identifies all of the Debtor's

scheduled claims, and all proofs of claim which have been filed[2] against the Debtor. As

provided by Section 502(c) of the Bankruptcy Code, the Court may estimate any contingent or

unliquidated disputed claim for purposes of confirmation of the Plan. The Court shall retain

jurisdiction over the Debtor, the Reorganized Debtor and the Case to resolve such objections to

claims following the confirmation of the Plan.

Nothing contained in the Plan shall constitute a waiver or release by the Debtor of any

rights of setoff or recoupment, or of any defense, it may have with respect to any claim. The

Disbursing Agent will withhold from property to be distributed under the Plan and will place in

reserve a sufficient amount of cash to be distributed on account of claims that are disputed and

have not been allowed as of the date of distribution to creditors ("Disputed Claims") of any

particular class as if such claims were allowed in full.

### 4.    Interest Pending Allowance of Claims

Except as specifically provided for in the Plan, in the order confirming the Plan, or in

some other order of the Court, interest shall not accrue on claims and no holder of a claim shall

be entitled to interest accruing on or after the Petition Date on any claim. Nothing set forth

herein shall limit or impair the accrual of interest provided for Class 1 through  7, secured

claims, whose respective treatments are described above.

To the extent the Debtor or any other party in interest objects to the allowance of any

claim, nothing in the Plan or herein shall be deemed to imply or create for the holders of any

Disputed Claims any entitlement to receive interest upon the allowed amount of any such

---

[2] All filed claims are subject to objections by Debtor as set forth herein.

Disputed Claims as a result, *inter alia*, of the delay in payment of such claims, except as expressly stated in the treatment pursuant to the Plan.

### 5.    Distributions to be Made Pursuant to the Plan

Distributions to be made by the Reorganized Debtor on account of any claim shall be made as promptly as practicable.  Distributions to be made by the Disbursing Agent under the Plan shall be made by check drawn on a domestic bank or by wire transfer, at the sole election of the Disbursing Agent.

Except as otherwise agreed to by the Disbursing Agent in writing, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Court, to such address.

Checks issued by the Reorganized Debtor or the Disbursing Agent to pay allowed claims shall be null and void if not negotiated within 60 days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Reorganized Debtor by the holder of the allowed claim to whom such check originally was issued, prior to the expiration of 120 days from the date of issuance of such check.  After such date, the claim shall be deemed disallowed and the monies otherwise payable on account of such claim shall revest in the Reorganized Debtor free and clear of all claims and interests.

In connection with the Plan and any instruments issued in connection therewith, the Reorganized Debtor shall comply with all applicable withholding and reporting requirements

imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

### 6.    Exculpations and Releases

To the maximum extent permitted by law, none of the Debtor, the estate, nor any of their employees, agents, representatives, or the professionals employed or retained by any of them, whether or not by Court order (each, a "Released Person"), shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation of the Plan, the Disclosure Statement, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein.  Each Released Person shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan.

### 7.    Injunctions

The occurrence of the Effective Date after the entry of the Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of an equity security holder that is terminated pursuant to

the terms of the Plan are permanently enjoined from taking any of the following actions against

the Debtor, the estate, or their property on account of any such discharged claims, debts or

liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in

any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in

any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien

or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against

any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action

in any manner, in any place that does not comply with or is inconsistent with the provisions of

the Plan.

By accepting distribution pursuant to the Plan, each holder of an allowed claim or

allowed interest receiving distributions pursuant to the Plan will be deemed to have specifically

consented to the injunctions set forth in this section.


**E.    Risk Factors**

The primary risk of implementing the Plan would be a decrease in rental income resulting

from a tenant defaulting in its lease or moving from the premises. Debtor has accounted for this

risk and has structured his plan so as to leave a surplus of approximately $270 per month which

will increase to $3,769.84 per month after the 1615 Delta renovations are complete and the

completed units filled with tenants. The surplus is intended to create a reserve which can be used

in the event Debtor suffers a decrease in rental income or there is a delay in obtaining a cure

from or replacing the defaulting tenant. Debtor has also planned for these risks by proposing a

Plan which commences most payments in the sixth (6th) full month following the Effective Date,

which will result in a reserve of approximately $70,000 only sixty percent (60%) of which will

be needed to complete the 1615 Delta renovations, the remainder of which will be left as a reserve to ensure plan feasibility.

Debtor is also negotiating a loan modification on behalf of WRP in hopes of reducing expenses and increasing the net income from that source to further build the reserve.

**F.     Other Provisions of the Plan**

    **1.     Executory Contracts and Unexpired Leases**

        **a)     Assumptions**

            **(i)     Schedule of Assumed Agreements.**

On the Effective Date, Reorganized Debtor will assume the executory contracts and unexpired leases identified in **Exhibit M** (attached to the Disclosure Statement). The Confirmation Order, subject to the occurrence of the Effective Date, will constitute a Court order approving the assumption, on the Effective Date, of the executory contracts and unexpired leases identified in **Exhibit M.**

            **(ii)     Cure Payments.**

Debtor is not in default of any executory contract identified in **Exhibit M.**

            **(iii)     Objections to Assumption or Proposed Cure Payments.**

Any person who is a party to an executory contract or unexpired lease that will be assumed under the Plan and who either contends that there exists a default requiring cure payments, or otherwise objects to the contemplated assumption <u>must</u> file with the Court and serve upon the Debtor and the Debtor's counsel a written statement, together with supporting declaration stating the basis for its objection and any supporting documentation for such objection. Such statement, declaration and documentation must be filed and served not later than

10 days before the date of the Plan confirmation hearing.  Any person who fails to timely file and serve such a statement and declaration will be deemed to have waived any and all objections to both the proposed assumption and the proposed cure amount in connection with such assumption.

The Disbursing Agent shall not be required to make any payment of any proposed or allowed cure amounts until that date which is 30 days after entry of a final order resolving any objection or other dispute regarding: (a) the proposed cure amount under the executory contract or unexpired lease which the Debtor seeks to assume; (b) whether the Debtor or Reorganized Debtor has provided adequate assurance of future performance under such executory contract or unexpired lease; or (c) any other matter pertaining to a proposed assumption, the dispute and approving the assumption.

**b)    Rejections**

To the extent that an executory contract or unexpired lease is not assumed, as specified in **Exhibit M**, on the Effective Date, all such executory contracts and unexpired leases shall be deemed rejected.  The Confirmation Order, subject to the occurrence of the Effective Date, shall constitute an Order approving the Debtor's rejection of all such executory contracts and unexpired leases.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WILL BE 30 DAYS AFTER DATE OF ENTRY OF THE CONFIRMATION ORDER. Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

**2.        Retention of Jurisdiction**

After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

        a.        To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

        b.        To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor, the Reorganized Debtor, or by other parties in interest with standing to bring such objection or proceeding;

        c.        To determine the extent, validity and priority of any lien asserted against property of the Debtor or property of the Debtor's estate.

        d.        To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and all matters referred to in the Plan, the Confirmation Order, and to determine all matters that may be pending before the Court in this case on or before the Effective Date with respect to any person or entity related thereto;

        e.        To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

        f.        To determine any request for payment of administrative expenses;

g.    To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this case whether before, on, or after the Effective Date;

h.    To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

i.    To modify the Plan under Section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

j.    Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Confirmation Order;

k.    To issue such orders in aid of consummation of the Plan or the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

l.    To enter a final decree closing this Case.

## G.    Tax Consequences of Plan

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues

the Plan may present to the Debtor.  The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all of the tax implications of any action.

The Debtor does not anticipate that confirmation of the Plan will have a significant or material effect on its tax liability.  The Debtor makes no representations regarding the potential tax consequences to creditors.

## V.  EFFECT OF CONFIRMATION OF PLAN

**A.      Discharge**

The Debtor will receive a discharge under the Plan pursuant to and in accordance with the provisions of Section 1141 of the Bankruptcy Code.

**B.      Revesting of Property in the Reorganized Debtor**

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Reorganized Debtor.  In addition, on the Effective Date, all of the claims against and/or interests in third parties that constitute property of the estate shall be revested in the Reorganized Debtor

**C.      Modification of Plan**

The Debtor may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

1    The Debtor may also seek to modify the Plan at any time after confirmation only if (1)

2    the Plan has not been substantially consummated and (2) the Court authorizes the proposed

3    modifications after notice and a hearing.

4

5

6    **D.    Post-Confirmation Status Report**

7    Within 120 days of the entry of the order confirming the Plan, the Debtor shall file a

8    status report with the Court explaining what progress has been made toward consummation of

9    the confirmed Plan.  The status report shall be served on the United States Trustee, the 20 largest

10    unsecured creditors, and those parties who have requested special notice after the Effective Date.

11    Further status reports shall be filed every 120 days and served on the same entities.

12

13

14    **E.    Quarterly Fees**

15    Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be

16    paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees

17    accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States

18    Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an

19    order of dismissal or conversion to chapter 7.

20

21

22    **F.    Post-Confirmation Conversion/Dismissal**

23    A creditor or party in interest may bring a motion to convert or dismiss the Case under §

24    1112(b) after the Plan is confirmed if there is a default in performing the Plan.  If the Court

25    orders the Case converted to Chapter 7 after the Plan is confirmed, then all property that had

26    been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will

27

28

revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property,

but only to the extent that the Court did not previously authorize relief from stay during the Case.

The order confirming the Plan may also be revoked under very limited circumstances.

The Court may revoke the order if the order of confirmation was procured by fraud and if the

party in interest brings an adversary proceeding to revoke confirmation within 180 days after the

entry of the order of confirmation.

**G.    Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the

Debtor or other party as the Court shall designate in the order confirming the Plan, shall file a

motion with the Court to obtain a final decree to close the Case.

Dated: November 20th, 2009                              TEMIDAYO AKINYEMI., an individual

_____

Temidayo Akinyemi, debtor and debtor-in-possession

Presented By:

WEINTRAUB & SELTH, APC

By:_____

Daniel J. Weintraub
Summer Saad
Attorneys for Chapter 11 Debtor and Plan Proponent.

37

| In re: TEMIDAYO AKINYEMI | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 2:09-bk-17862-EC |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

### PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 12121 Wilshire Blvd., Suite 1300, Los Angeles, CA 90025. The foregoing document described **CHAPTER 11 PLAN OF REORGANIZATION OF TEMIDAYO AKINYEMI** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On November 30, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Russell Clementson    russell.clementson@usdoj.gov
- Jerome S Cohen    jsc@jscbklaw.com
- Jason E Goldstein    jgoldstein@buchalter.com, bkgroup@buchalter.com
- Alexandra Kazhokin    akazhokin@buchalter.com, rreeder@buchalter.com;ifs_filing@buchalter.com
- Steven M Lawrence    generalmailaswlawoffice.com@alvaradoca.com
- Han K. Lee    han@wsrlaw.net
- Christopher M McDermott    ecfcacb@piteduncan.com
- JaVonne M Phillips    bknotice@mccarthyholthus.com
- Karen A Ragland    Karen.Ragland@prodigy.net, garwackilaw2@prodigy.net
- John D Schlotter    bkmail@mrdefault.com
- Timothy J Silverman    tim@sgsslaw.com
- John M Sorich    generalmail@aswlawoffice.com, kbernal@alvaradoca.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On N/A I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐ Service List – service information for persons(s) and/or entity(ies) continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on November 30, 2009 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**Deliver to: United States Bankruptcy Judge Ellen Carroll**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 30, 2009 | Erika Hallrud | |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.